Warden, J.
The plaintiff declares on what purports to be a recognizance, taken in Franklin county, by an associate judge, for 511] the appearance of John M. West in Franklin ^county common pleas, to answer an indictment for murder in the second degree.
A plea to the jurisdiction of the court in which the action was commenced first demands attention. It is insisted that the action is local. This point is made under a provision of the act “ to regulate the practice of the judicial courts,” passed March 8, 1831, that whenever a recognizance shall, as provided in that act, be returned to the court of common pleas, and minuted on the journal, it “ shall be considered as of record in such court, and proceeded on by process, issuing out of said court, in the same manner as if such recognizance had been entered into before said court.” But we can not construe this act to require that an action of debt on such recognizance should be commenced by process issuing out of said court. The word “shall,” as here used, means nothing more than may. Power is thus conferred on the court to proceed on the recognizance by scire facias, as in other recognizances; and such an action as that here prosecuted, is neither allowed or forbidden by the act. Our law has set its face against local actions, and it would be strange if this statute had been designed to make an exception to the general rule, on this subject. But, construing the act to refer only to scire facias, the provision is quite intelligible, such a writ always issuing out of the court where the record remains.
The demurrer to this plea is well taken.
Departing from the order in which the pleas present the other questions to be examined, we proceed according to what seems a more natural relation of the points made, as we have considered them.
The sixth plea, after averring that West was not arraigned at the term when the indictment was found, and that the court fixed the amount of bail at that time, continuing the cause to the succeeding term, alleges that no capias was issuéd on the indictment, and that *512, 513 “ the said supposed recognizance in said declaration mentioned, was not signed or sealed by the parties thereto.” This plea is framed to meet ^provisions of the statute, which we hold to have no [512 application to the taking of a recognizance by a single judge. Sections 13, 14, 15, 16, of “ an act concerning mesne process in civil cases,” passed February 10, 1831 (Swan, old ed. 722), contain the provisions alluded to. Section 13 is not free from inaccuracy, and its mention of the mere failure of the state to arraign the prisoner, as an alternative in which, as though the accused were not yet arrested, an order must be made fixing the amount of bail to be taken when the accused shall be arrested, is one of the too many instances to be found of inconsistencies and obscurities in our statute law. But there can, we think, be no doubt that all the sections cited con•template the arrest of one not yet in custody, and provide only for a recognizance to be taken by some officer “ charged,” in the language of the statute, “ with the duty of arresting ” the person indicted. As we shall see when we come to consider some of the other picas, the whole regulation of bail taken by a judge differs from that applying to an arresting officer. Holding the statute of February 10, 1831, inapplicable to such a caso as that supposed by the plea and declaration, we need only add that the singular provision in that act for the signing and sealing of a recognizance can not have the effect of requiring signatures and seals to a recognizance taken by a judge or a court.
The demurrer to this plea is good.
The fifth plea avers that in taking this recognizance the act of the jailer in taking the accused before the judge, and the act of the latter in admitting him to bail, were done in their individual and personal, not in their official capacity, no special warrant under the hand and seal of the judge having been issued to bring up the prisoner.
Was this necessary?
After defining the authority of a single judge to take bail, the act of March 7, 1831, provides a convenient but by no means necessary mode of bringing the prisoner before him. “ For taking such bail,” says the statute (Swan, old ed. 927), “ the judge mag, by his special warrant, under his hand and *seal, require the [513 sheriff or jailer to bring such accused person before him, at the courthouse of the proper county, at such time as in said warrant the judge may direct.” While we must regard the section from which this clause is quoted as conferring the only authority there given to a single *514 judge to take bail (except when he acted on habeas corpus, or on a surrender by bail), and must hold him strictly to the cases it mentions, we can not suppose the warrant to bring the prisoner before him essential to his jurisdiction. If the sheriff, without being so required, choose to take the accused before the judge, the whole object of the statute is accomplished.
This fifth plea can not be upheld.
Nor can the third plea be sustained. Of course the forwarding' ©f the recognizance to the clerk or prosecuting attorney, is not what this plea means to deny. The presence of the recognizance when it was forfeited (a fact not questioned by the plea) is evidence of its having been forwarded. But the plea does mean to deny that a transcript of the proceedings of Judge Lazelle was forwarded with the recognizance by him taken. It is said “ the transcript of his proceedings, with the recognizance, is necessary to show his authority and jurisdiction over the person and subject-matter. The statute is imperative in requiring such transcript with the recognizance.” 46 Ohio L. 95. If we read the law rightly, this is not its true construction. The words are as follows: “ That it shall be the duty of every judicial or other officer hereafter taking a recognizance binding any person to appear in any court of common pleas in this state, to answer to the charge of any crime or offense, to forward said re- • cognizance, together with a transcript of his proceedings in said case, to the prosecuting attorney or clerk of said court, within, twenty days after the same shall have been entered into, if so many days intervene between the taking of the recognizance and the sitting of said court. But if said recognizance shall be taken less 514] than twenty *days before the sitting of said court, then the-same, together with said transcript, shall be returned to said prosecuting attorney or clerk, on or before the first day of the next term or if taken in term time, the same shall be returned forthwith; and any officer failing to return any recognizance within the time herein prescribed, shall forfeit all fees accruing to him in the case in which said recognizance was taken; and it shall be the especial duty of the clerk to disallow and cast the same out of the bill of costs; and the officer receiving any recognizance shall immediately indorse thereon the date of his receiving the same, and subscribe his name thereto.”
Taking this whole provision into one view, is it not plain that the transcript contemplated is that of a justice of the peace — of an *515 examining magistrate — who has admitted the party examined to-bail? The transcript is to be of the officer’s “proceedings in said, case.” Now, what proceedings can the judge be required to record ?' The law governing his action is contained in a section of another-statute, and the word transcript is nowhere mentioned (in respect of a judge’s taking recognizance, if this act of 1848 refers, as we-think it does, to another and different officer, so far as it provides for the forwarding of a transcript. No good reason for requiring a-transcript is or can be shown. The recognizance is itself a record,, and a full one, if it is what the law requires.
We come now to examine the question raised by the seventh plea.
The facts set up or referred to by this plea are substantially as-follows:
At the March term, 1850, of the court of common pleas of Franklin county, an indictment was found by the grand jury against-John M. West, one of the above-named defendants, for murder in the second degree.
At the same term the court made an entry of the cause on their-journal, continued the same, and ordered that West might be held-to bail in the sum of $3,000.
^Accordingly, on the 20th day of April, 1850, a recogni- [515-zance was taken and deposited with the clerk of said county, by-John A. Lazelle, and filed by the clerk, as follows:
“We, John M. West, Samuel J. McClure, and David West, do-hereby jointly and severally acknowledge ourselves to owe and be indebted unto the State of Ohio in the sum of three thousand dollars,, which we and each of us acknowledge shall be made of our respective goods and chattels, lands, and estates, to and for the use of the said State of Ohio, if default be made in the condition following, to wit: That if the said John M. West shall personally be and' appear before the court of common pleas of Franklin county, and State of Ohio, on the first day of the next term thereof, to answer-unto the said State of Ohio, of charge of murder in the second degree, pending against him in said court; shall continue so to be and appear before the said court from day to day, abide-the decision and sentence of the said court, and not depart the court without leave thereof, then this recognizance to be void, otherwise in full force and virtue in law.
“ In testimony whereof, we have hereunto set our hands and seals,. this 20th day of April, A.D. 1850 JOHN M. WEST, [L. S.]
"S. J. McClure, [L. s.]
"D. West [L. S.]
"Attested and approved: "John A. Lazelle, Associate Judge."
*516 The paper apon which this suit is brought is as follows
•“The State of Ohio, Franklin County, ss:
“ Personally came before me, John A. Lazelle, one of the associate judges of the the court of common pleas of said county, John M. West, Samuel J. McClure, and David West, and jointly and severally acknowledge themselves to oweand.be indebted unto the State of Ohio, in the sum of three thousand-dollars, which they and each of them acknowledge shall be made and levied of their •respective goods and chattels, lairds, tenements, and estates, to and for the use of the said State of Ohio, if default be made in the con- ■ dition, following, to wit: That if the said John M. West shall personally be and appear before the said court of common pleas of said Franklin county, on the first day of the next term thereof, to an- : swer unto the said State of Ohio, of the charge of murder in the • second degree, pending against him in said court; shall continue so to be and appear before said court from day to day, abide the de- ■ cisión and sentence of the said court, and not depart the court without leave thereof, then this recognizance to be void, otherwise'in full force and virtue in law.
“ Taken and acknowledged before me, witness, John A.- Lazelle,
: associate judge of the said court of common pleas, this 20th day of April, a. d. 1850.
“John A. Lazelle,

“Associate Judge."

• 516] *This paper was never filed by the clerk. No memorandum of it, or its contents, or of the fact that it was filed or forfeited, .appears from the journals of the court or otherwise. The only evidence that it was ever in the clerk’s office, or that it ever possessed any official character or authenticity, is by an indorsement, as follows :
“ This recognizance was duly forfeited in open court, on the third ■ day of June, 1850.
“Attest: L. Heyl, Clerk."
Was the supposed recognizance in the declaration invalid by-reason of the taking'of the acknowledgment, bond, or obligation, signed and sealed by these defendants, and filed with the clerk as a recognizance? In other words, was the first writing a valid re- - cognizance ? And did the powers of the judge exhaust themselves when he “ attested and approved ” it ? We think not. The first :paper was not a recognizance. It was a mere bond, such as the *517 judge had no power to take. All his authority to take bail is expressed by a provision of law in which he is empowered “ to admit such person to bail, by recognizing such person,” etc. Swan (old ed.), 727. The paper which he is to sign is a recognizance which, when it comes before the court of which he is a member, becomes, completely what its name imports, an acknowledgment of record. All its solemnity and authenticity depend upon his own certificate,, that the acknowledgment it sets forth was made openly before him by the parties in person. No parol proof can vary, enlarge, or explain it. Having a high legal character, it must be so framed as to.be certain, and must show itself to have all the qualities which warrant courts in acting on it as a record, not to be contradicted. No such loose words, as “ attested and approved,” can give it these characteristics. It must not be left doubtful whether the attestation refers to its identity as a bond approved by the judge, and tendered to him (for aught that appears), by one of the parties, or • by attorney; or, according to another construction, imports that he witnessed the signatures merely; or, according to still *an- [517 other reading, is meant to express that the judge not only took the acknowledgment, but witnessed its written evidence.
This first paper, then, was not a valid recognizance; and we have seen, if it was a mere bond, the judge could not take it, and it was a nullity. That it was filed with the clerk could not give it legal vitality. No discharge of the prisoner is averred to have followed it; and the plea does not deny the immediate execution of the writing sued on as a recognizance. It merely alleges that the prisoner, by giving what we have called a bond, “fully com. plied with the said order of said court in the premises, and was-entitled to be discharged from custody; and at the time of the ■ making of said supposed recognizance in the first and second counts of said declaration mentioned, tho said West and said Samuel and David had then and theretofore signed, sealed, and delivered the said recognizance herein set forth, and the same was and had been attested, approved, and received in pursuance of law.” Looking at the dates of the two papers, we find them the same. Taking this pleading most strongly against the pleader, as wo must, it appears that, without any discharge of the prisoner, the judge, disregarding the invalid and wholly illegal paper he had taken, proceeded to take a good recognizance. If there were no- *518 ■other objection to this recognizance, its sufficiency could not be ■questioned.
The demurrer to the seventh plea is well taken.
The objection to the recognizance set up by the first and second •plea is, that the clerk “ did not immediately, on receiving said supposed recognizance, or afterward, indorse thereon the date of his receiving the same, and subscribe his name thereto.” A careful examination of the statute on which this objection is taken will show it to be unfounded. 46 Ohio L. 95. The whole purpose of section 4 of that act is to facilitate the business of the grand jury, the prosecuting attorney, and the court, by compelling the early forwarding of transcripts and recognizances. It defines not the •requisites of a recognizance, but the duties of any officer charged or authorized to take it after it is taken, and constantly supposing 518] *its sufficiency. If those duties be neglected, no damage is done to the recognizance, but the officer loses his fees. Whether, as argued by one of the defendant’s counsel, the act of 1831 is still so far in force as to require a memorandum of the recognizance on the journal in order to make a record of the recognizance, or that act is, in this particular, wholly superseded by the provisions of section 3 in the act of 1848, we are equally satisfied that the indorsement of the time of filing by the clerk or prosecuting attorney is merely directory; that it can give no greater certainty or solemnity to the paper, since it is not done in the presence or by order of the court, and in the case of the prosecuting attorney ’'is not even the act of a certifying officer, or any one connected with •the making or custody of the records; and that, as we have said, its only purpose is to cut off the fees of any officer who may unreasonably delay or neglect his duty in returning the recognizance.
It is said by one of the learned counsel for the defendants that the memorandum in the minute-book of recognizances returned to the court of common pleas, required to be made by the old law, statute of March 8, 1831 (Swan, old ed. 652), “is dispensed with by the law of 1848, and the loose and vague substitute is the indorsement on the back of the recognizance by the clerk, with his signature of the filing in his office by the officer. Even this counsel on the other side desire the court to dispense with, and test it as if the law did not require it to be done.” This view of the case, and the law would respond to the questions as raised by the plea. But we have already shown why we can not consider the indorse- *519 ment here referred to as more than merely directory. Quite enough, is provided by section 3 of the act of 1848 to show that the recognizance becomes a record in contemplation of law when the indorsement of its forfeiture is made by the clerk. “ Whenever a recognizance in any criminal case shall be forfeited in the court of common pleas, whether taken before such court, before a judge of any court of this state, or before any justice.of the peace; and whenever any ^recognizance which shall have been declared [519 forfeited by a justice of the peace shall be returned into the court of common pleas, it shall not be necessary to make any minute of such forfeiture or of such return of such justice of the peace in the journal of the court; but it shall be sufficient for the clerk-to make & memorandum of the date of such forfeiture in the court of common pleas, or of the date of the return by such justice of the peace ■of such forfeited recognizance into such court, as the case may be, upon the back of such recognizance, which memorandum shall be attested by the signature of such clerk; whereupon such recognisance, and the forfeiture of the same, shall be deemed of record in -such court, and it shall not be necessary to enter upon the journal -of the court any recognizance which shall be taken during the .session of the same, but every such recognizance shall be deemed valid in law, if taken in open court, and attested by the clerk of such court.”
Whether we can, in the state of thpse pleadings, make any use -of the suggestion made in argument by another of the counsel for -defendant, of a construction of this act quite opposite to that just noticed, may be questionable.- It is, however, argued by the counsel alluded to, that if the indorsement by the clerk or prosecuting .attorney, required by the fourth section of the act of 1848, is not necessary, still the following provision of the law of 1831 has not been complied with; and it is contended that it can stand with the ■act of 1848, and must be regarded as having been in force when ■the supposed recognizance was taken. The act of March 8, 1831, provides: “That whenever any recognizance shall be returned to any court of common pleas, by a justice of the peace or other officer authorized to take such recognizance, a memorandum thereof shall be entered in the minute-book of the court; whereupon the same ■shall be considered as of record in such court, and proceeded on by process issuing out of said court, in the' same manner as if such jrecognizance had been entered into before such court; and the same *520, 521 recognizance shall be made out and recorded in full, in the book 520] *of records of said court, in the same manner as recognizances-taken in such court.”
Whether this single provision of an act, in other respects looking entirely to civil proceedings, ought, when its judicial construction first became necessary to have been applied to such recognizances, as that here in question, might, perhaps, be doubted; but that construction has been given to it, and we can not say that it was wi’ong. But be that as it may, we are clearly of opinion that it was-wholly superseded by the provision for the'forfeiture of recognizances, contained in the section last read from the statute of 1848. And such, we find, was the legislative understanding. For on the 12th of March, 1853, the legislature restored the provision of the act of March 8, 1831, in the very words of the section which we have said was superseded by the act -of 1848. And it is worthy of note that one of the learned counsel has, in a note to the act of March 12, 1853, contained in his excellent revision of the statutes, intimated the opinion that the now enactment supersedes all but the last four lines of the third section of the act of 1848 — which four lines refer to a recognizance taken in open court. It is thus apparent that the learned counsel does not share the opinion of his ■ colleague, expressed in the argument, that there was no repugnancy between the acts of 1831 and 1848, in the particular referred to. We quite agree with him that there was a legislative intention in 1848 to dispense with the memorandum on the journal; and might, if the question were here presented, adopt his suggestion that the provision in the act of 1848, for the forfeiture of recognizances, can not stand with the re-enactment of the old requirements of the law which the legislature thought proper in 1853. But we are not authorized by the record before us to examine this last question.
The only remaining plea which is demurred to is the fourth; and this we think is good. We are concluded by authority on this subject. The whole right of a single judge to take bail, when this 521] recognizance was taken, was contained *in the habeas corpus act, the section to which we have referred in the act of March 7, 1831, and the act relating to surrender by the bail. There is no question of a recognizance under a writ of habeas corpus made by these pleadings. Nor is it claimed in the declaration, or admitted by the plea, that there was any surrender by bail, so as to bring the case under the act of 1834. Swan (old ed.), 723. By the act *522 of March 7,1831, under which this recognizance was taken, the judge was only warranted to take a recognizance when the defendant was confined in jail under a magistrate’s mittimus, or a capias issued on an indictment. The plea denies both these conditions on which his jurisdiction depended. And it can not be said that there is any contradiction of the record involved in such a plea. .If there were, however, although the plea would be bad on special demurrer, as amounting only to the plea of mil tiel record, it would still be good on general demurrer. I am clearly of opinion that the imprisonment was not illegal. A right of arrest exists where there is well-grounded suspicions of felony, though no felony prove to have been committed — a right denied as to offenses of less magnitude, but as to the higher offenses essential to good order and the security of life — a right fully recognized by authorities, both English and American. If such a right exists when no felony exists or has been charged in any formal manner, a fortiori must a sheriff have a right to take and hold in custody one indicted of a murder. Such may have been the custody here, but it was. not such as gave jurisdiction to recognize the prisoner to an associate judge. This fourth plea, therefore, is good.
Demurrer to the first, second, third, fifth, sixth, and seventh pleas sustained. Demurrer to the fourth plea overruled. Leave to amend declaration and reply to the fourth plea in ninety days. Leave to plead de novo within one hundred and twenty days, and every twentieth day thereafter to be a rule day, until issue joined; and cause remanded to the district court for further proceedings.